**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>LUIS EDUARDO VELASQUEZ-CORDERO<br><br>Defendant.<br><br>DOMENICO CRUGNALE<br><br>Third-Party Petitioner | Case No. 2:20-cr-00106 (BRM)<br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is the United States of America's ("Government") Motion to Dismiss (ECF No. 52) third-party petitioner Domenico Crugnale's ("Crugnale") Petition (ECF No. 44) pursuant to 21 U.S.C. § 853(n) and Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure. Crugnale filed an Opposition on February 8, 2024. (ECF No. 58.) The Government filed a reply on February 22, 2024. (ECF No. 59.) Crugnale filed a supplemental letter on March 6, 2024. (ECF No. 60.) The Government filed a supplemental letter responding to Crugnale's letter on March 19, 2024. (ECF No. 62.) Crugnale filed a further letter containing supplemental authorities on April 7, 2024. (ECF No. 64.) Having reviewed the submissions filed in connection with the Motion and having held oral argument on April 9, 2024 (ECF No. 65), for the reasons set forth below and for good cause having been shown, the Government's Motion to Dismiss Crugnale's Petition is **GRANTED** and Crugnale's Petition is **DISMISSED WITH PREJUDICE**.

## I.   BACKGROUND

### A.   Factual Background

"[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241 (2d Cir. 2011) (quoting *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir.2004)). For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Petition as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015) (finding, in the context of a criminal forfeiture proceeding, that "[a] motion to dismiss a third-party petition 'should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)'" (quoting *Willis*, 652 F.3d at 241); *United States v. Sze*, No. 22-0141, 2024 WL 195468, at *5 (D.N.J. Jan. 18, 2024) (finding that "a court must take the facts alleged in the petition as true and determine if the petitioner plausibly alleged facts giving rise to a claim for relief."). The Court also considers any "document integral to or explicitly relied upon in the [petition]." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Crugnale's Petition arises from the seizure of money ("Seized Funds") at two bank accounts held in the name of OASM International Services LLC ("OASM"). The Government seized $1,136,997.41 from the first bank account at Citibank, and $347,459.04 from the second bank account at Bank of America (together, "OASM Accounts"). (ECF No. 44 at 1.) Crugnale is a Venezuelan citizen who offers currency exchange services for customers in Venezuela, providing U.S. dollars in exchange for Venezuelan bolivars. (*Id.* at 2–3.) Customers would typically supply

bolivars to Crugnale's account in Venezuela. (*Id.* at 2.) After receiving the bolivars, Crugnale would immediately transfer the equivalent amount in dollars to a payee or account designated by the client. (*Id.* at 2–3.) Crugnale would retain a portion of the dollar transaction as his fee for the service. (*Id.* at 3.) To convert the bolivars into dollars, Crugnale would transfer the bolivars to the Colombian Parallel Market ("Market") and collect the equivalent amount of dollars from the Market. (*Id.*) Specifically, Crugnale sent the bolivars to exchange houses in Cúcuta, Colombia, including Casa de Cambio San Diego, Casa de Cambia Andina, and Case de Cambio de Carlos Mario. (*Id.* at 3–4.) Crugnale then deposited the dollars in various bank accounts, including the OASM Accounts. (*Id.* at 3.) The specific transactions leading to the deposit of dollars in the OASM Accounts were part of Crugnale's currency exchange services. (*Id.*) Crugnale exchanged bolivars for dollars on the Market over a period of approximately six years. (*Id.* at 4.)

As part of his currency exchange business, Crugnale used bank accounts in Venezuela at La Tienda GSM. C.A., Inversiones Gil Godoy C.A., and Comercializadora La Pastora De Lara C.A. (together, "Venezuelan Accounts"). (*Id.* at 3.) Crugnale's clients, including Alimentos Mary, Distribuidora Ebenezer, Agroinsumos Lara, Improa Santoni, MP Agro, Obelca, Alimentos b2, and Arrocera Chispa deposited bolivars in the Venezuelan Accounts. (*Id*.) Crugnale immediately provided dollars to these clients via the OASM Accounts. (*Id.*)

Crugnale's associates Samy Morgenstern ("Morgenstern") and Oscar Salas ("Salas") were the signatories for the OASM Accounts and served as principals for OASM. (*Id.* at 4–5.) Crugnale maintained full online access to the OASM Accounts and conducted online transfers. (*Id*.) Crugnale paid Salas a monthly fee to allow Crugnale to utilize the OASM Accounts. (*Id.* at 5.) OASM's only line of business was Crugnale's currency exchange service. (*Id.*)

**B.      Procedural History**

Defendant Luis Eduardo Velaszquez-Cordero ("Defendant") was charged with violations of 18 U.S.C. §§ 1956–57. (ECF No. 1.) Count One of the Indictment specifically charged Defendant with "Conspiracy to Launder Monetary Instruments and Engage in Monetary Transactions in Property Derived from Specified Unlawful Activity" for money laundering offenses stemming from transactions between the United States and the Dominican Republic. (*Id.* ¶¶ 1–7.) In these transactions, Defendant laundered money gained from drug sales and facilitated the return of such money to drug trafficking organizations. (*Id.*) The Indictment requested forfeiture of Defendant's property in the OASM accounts in the amounts of $1,136,997.41 from an OASM account at Citibank, and $347,459.04 from an OASM account at Bank of America. (*Id.* at 7.) On May 4, 2022, Defendant pled guilty to Count One of the Indictment. (ECF Nos. 22–25.) On May 30, 2023, the Court ordered the forfeiture of $1,136,997.41 from an OASM account at Citibank, and $347,459.04 from an OASM account at Bank of America. (ECF No. 40.) On October 25, 2023, Crugnale filed a petition requesting a hearing to adjudicate his interest in the OASM Accounts pursuant to 21 U.S.C. § 853(n) and Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure. (ECF No. 44.) The Government filed a motion to dismiss the Petition on December 29, 2023. (ECF No. 52.) Crugnale filed an Opposition on February 8, 2024. (ECF No. 58.) The Government filed a reply on February 22, 2024. (ECF No. 59.) On March 6, 2024, Crugnale filed a letter purporting to contain the consent of OASM for Crugnale to act on its behalf in this matter. (ECF No. 60.) On March 19, 2024, the Government filed a letter requesting the Court to disregard OASM's purported consent for Crugnale to act on its behalf. (ECF No. 62.) On April 7, 2024, Crugnale filed a letter containing supplemental authorities. (ECF No. 64.) The Court held oral

argument on Crugnale's petition on April 9, 2024. (ECF No. 65.) On April 22, 2024, Crugnale submitted a letter indicating that settlement talks with the Government had reached an impasse. (ECF No. 66.)

## II.   LEGAL STANDARD

Criminal forfeiture is initially ordered after an adjudication of the rights of the Government and the defendant "without regard to any third party's interest." *United States v. Nicoll*, 711 F. App'x 108, 110 (3d Cir. 2017) (quoting Fed. R. Crim. P. 32.2(b)(2)(A)). At this first stage, Rule 32.2(b)(2)(A) only requires "that the Government demonstrate why forfeiture of the defendant's property is appropriate to ensure that it does not wrongly seize property unrelated to a defendant's criminal activity." *Nicoll*, 711 F. App'x at 110. The first stage therefore serves only as a procedural safeguard for the defendant, and third parties are barred from intervening at this stage. *Id.* at 110–11; *see also Sze*, 2024 WL 195468, at *4.

During the second stage of a forfeiture proceeding, third parties may file "ancillary proceedings and establish their superseding or bona fide-purchaser interests in the forfeited property." *Nicoll,* 711 F. App'x at 111 (citing Fed. R. Crim. P. 32.2(c)). These post-trial ancillary proceedings are governed by 21 U.S.C. § 853(n). *United States v. Dupree*, 919 F. Supp. 2d 254, 262 (E.D.N.Y. 2013). A petition in a third-party ancillary proceeding must "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." *Sze*, 2024 WL 195468, at *4. To initiate an ancillary proceeding, "a third-party petitioner must demonstrate that [he] has a legally sufficient interest in the forfeited property to give [him] standing to challenge the forfeiture." *Id.* A third-party petitioner has two statutory grounds to assert a legal interest in forfeited property. The first

ground is based on the petitioner showing "that he possessed a 'superior interest' at the time of the offense under § 853(n)(6)(A)." *United States v. Swartz Fam. Tr.*, 67 F.4th 505, 513 (2d Cir. 2023). The second ground is based on the petitioner showing "that he was a 'bona fide purchaser for value' reasonably without cause to believe that the property was subject to forfeiture under § 853(n)(6)(B)." *Id.*

Federal Rule of Criminal Procedure 32.2(c) permits the Court to "on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." *United States v. Patel*, No. 16-00584, 2019 WL 3216654, at *3 (E.D.N.Y. July 17, 2019) (quoting Fed. R. Crim. P. 32.2(c)). "[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Willis*, 652 F.3d at 241 (quoting *Pacheco*, 393 F.3d at 352). Therefore, a court takes the facts in the petition as true and determines if the facts in the petition assert a plausible claim for relief. *Sze*, 2024 WL 195468, at *5; Fed. R. Crim. P. 32.2(c)(1)(A) ("In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.").

"To survive a motion to dismiss, a [petition] must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To be facially plausible, "the pleaded factual content" must allow the court to draw the reasonable inference that the petitioner is entitled to relief *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the petition allege "more than a sheer possibility" that the petitioner is entitled to relief but "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual

allegations" are not required, but the petition must include "factual enhancements" and not just conclusory statements. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any factual claims and assertions raised by the Government. *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a [petition] states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of [entitlement to relief], the [petition] has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss. *Id*. at 678. To prevent dismissal, all petitions must set out "sufficient factual matter" to show that the claim is facially plausible. *Id*. This "allows the court to draw the reasonable inference" that the petitioner is entitled to relief. *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a petitioner must show that the allegations of his or her petition are plausible. *See id.* at 670.

### III.   DECISION

#### A.   Letter Regarding Crugnale's Authority to Act on Behalf of OASM

On March 6, 2024, Crugnale filed a letter purporting to contain the consent of OASM for Crugnale to act on its behalf in this matter. (ECF No. 60.)

The Government asks the Court to disregard Crugnale's letter as it is procedurally and substantively deficient. (ECF No. 62 at 1.) The Government argues the purpose of Crugnale's letter is unclear, as it could be construed either as an amendment to Crugnale's own petition, or as a new petition by OASM. (*Id.*) To the extent the letter attempts to amend Crugnale's own Petition, the

Government claims the amendment is untimely, as it was submitted more than thirty days after Crugnale received written notice of the forfeiture. (*Id.* at 1–2.) In this case, written notice was sent to Crugnale and his attorney on September 26, 2023, and delivered by FedEx on September 27, 2023. (*Id.* at 2.) The cover letter sent to Crugnale set forth a deadline of October 31, 2023 for Crugnale to file a petition, and Crugnale filed his original petition on October 25, 2023. (*Id.*) The Government claims the thirty-day deadline also applies to amended petitions, meaning any amendment to Crugnale's Petition would be more than four months late. (*Id.*) The Government also asserts that Florida law bars the proposed amendment, as Crugnale and OASM are separate entities with distinct interests, meaning that Crugnale cannot incorporate OASM's legal interest in the OASM Accounts into his own claim. (*Id.* at 2–3.)

To the extent the letter is intended to be a new petition by OASM regarding the seized funds in the OASM Accounts ("Seized Funds"), the Government also argues the petition is untimely based on the thirty-day rule. (*Id.* at 3–4.) The Government sent its last notice of forfeiture to OASM, care of Salas, and Morgenstern on November 28, 2023, which was delivered on November 29, 2023. (*Id.* at 4.) The deadline to file a petition listed in the notice was January 2, 2024. (*Id.*) Therefore, the Government claims a new petition would be untimely by at least two months. (*Id.*) Although OASM was administratively dissolved at the time the notice was delivered, the Government claims Florida law still allowed for the commencement of a proceeding against OASM and did not terminate the authority of its registered agent, meaning "OASM was amenable under Florida [*sic*] to receiving notice of forfeiture." (*Id.*) The Government further claims OASM was on actual notice of forfeiture no later than mid-December, when "Morgenstern and Salas (in their capacity as members of OASM) signed declarations in support of Crugnale's opposition to the Government's motion to dismiss." (*Id.*) Therefore, the Government alleges that, under an actual

8

notice standard, the new petition would have been due on January 15, 2024. (*Id.*) The Government also argues that OASM failed to properly sign the petition "under penalty of perjury," as required by § 853(n)(3). (*Id.* at 5.) The Government further claims the letter fails to set forth "the nature and extent of" OASM's interest in the OASM Accounts, as well as other information required by § 853(n)(3) such as "the time and circumstances of . . . [OASM's] acquisition of the right, title, or interest in the . . . [OASM Accounts], [or] any additional facts supporting" OASM's claim. (*Id.* (quoting 21 U.S.C. § 853(n)(3)).) The Government argues that an assertion by OASM of a right in the OASM Accounts would directly contradict Crugnale's assertion of his own right to the accounts. (ECF No. 62 at 5–6.) Finally, the Government asserts a new petition by OASM should not be considered because no attorney "has entered a notice of appearance on behalf of OASM" as required by law for an LLC to appear in federal court. (*Id.* at 6.)

If Crugnale intends the letter to be an amendment to his own Petition, the Court will not consider the letter as part of his Petition, as the letter is untimely, and the time requirements of § 853(n)(2) are strictly construed. Unlike ordinary civil proceedings, "the timing requirements for filing third party petitions under § 853(n)(2) are strictly construed." *Sze*, 2024 WL 195468, at *12; *see also United States v. Croft*, No. 18-00603, 2023 WL 3676959, at *2 (W.D. Tex. May 26, 2023) ("The Fifth Circuit, along with many other circuits, has routinely held that the Section 853(n)(2) deadline is mandatory."); *United States v. Fabian*, No. 11-157, 2013 WL 150361, at *7 (W.D. Mich. Jan. 14, 2013) ("Further, the Fabians' corrected Amended Petition, containing a signature for SWM Holdings, LLC, was filed well past the thirty-day period provided in 21 U.S.C. § 853(n)(2). Therefore, the Court grants the government's Motion to Strike the corrected Amended Petition."). Courts have therefore applied § 853(n)(2) to deny amendments to petitions filed after the thirty-day deadline. *See Sze*, 2024 WL 195468, at *12 (denying petitioner leave to amend

petition because "the timing requirements for filing third party petitions under § 853(n)(2) are strictly construed"); *Fabian*, 2013 WL 150361, at *7; *United States v. Klemme*, 894 F. Supp. 2d 1113, 1116–17 (E.D. Wi. 2012) (refusing to consider third-party petitioner's letter purporting to amend petition because "[t]he letter also sets forth what appears to be a new basis for relief in response to the government's motion to dismiss, contrary to the deadlines set forth in § 853(n)(2)"). To the extent the Second Circuit in *Swartz* permitted an amendment to a third-party petition, the present case is distinguishable as the Government has not acknowledged that additional development of the record is necessary in this case, as it did in *Swartz*. *Swartz*, 67 F.4th at 520. Here, the forfeiture notice was sent to Crugnale on September 26, 2023, and delivered on September 27, 2023 with the deadline to file a petition being October 31, 2023. (ECF No. 62-1 ¶¶ 4–6; ECF No. 62-2 at 5, 20–23.) The letter purporting to amend Crugnale's petition was filed on March 6, 2024. (ECF No. 60.) Therefore, Crugnale's letter did not comply with the thirty-day deadline mandated by § 853(n)(2). Accordingly, the Court will not consider Crugnale's letter to the extent it attempts to amend Crugnale's petition.

The letter would also be untimely as a new petition from OASM, as § 853(n)(2)'s deadline applies to new petitions, and the letter was filed more than sixty days after the deadline in the Government's last notice to OASM and Morgenstern. In this case, the Government sent its last notice to OASM and Morgenstern on November 28, 2023, which was delivered on November 29, 2023 and specified January 2, 2024 as the deadline for filing a petition. (ECF No. 62-1 ¶¶ 8–11; ECF No. 62-3 at 2–3; 18–19.) Therefore, the letter of March 6, 2024 was over two months after the final deadline for OASM to file a petition. (ECF No. 60.) Service on OASM was effective under Florida law (where the LLC is constituted) (ECF No. 62-4 at 2–3) based on Florida statutes permitting the commencement of proceedings against dissolved LLCs, Fla. Stat. Ann.

10

§ 605.0717(1)(b), and retaining the authority of the dissolved LLC's registered agent. *Id.*
§ 605.0717(1)(d). Therefore, to the extent the letter is intended as a new petition from OASM, the
Court disregards the petition pursuant to § 853(n)(2). *See Croft*, 2023 WL 3676959, at *2; *United
States v. Sharma*, 509 F. App'x 381, 382 (5th Cir. 2013) ("A third party who files an untimely
petition loses his right to assert any interest in the property."); *United States v. Negron-Torres*, 876
F. Supp. 2d 1301, 1305 (M.D. Fla. 2012) ("Because Rodriguez–Colon did not file her petition until
thirty-seven days after she received notice of the forfeiture, her petition was untimely.").

Accordingly, the Court will not consider Crugnale's supplemental letter of March 6, 2024.
(ECF No. 60.)

### B.   Standing

#### 1.   Briefing

The Government argues Crugnale has failed to show statutory standing under § 853(n)(2)
because he was not the legal holder of the OASM Accounts. (ECF No. 52 at 14.) The Government
claims the Court should apply Florida law to determine the validity of Crugnale's interest in the
OASM Accounts, since that is the state where the property right was created. (*Id.*) The Government
asserts that under Florida law, a third-party has no "legally cognizable interest" in a bank account
held under another person's name. (*Id.* at 15.) The Government claims that the Eleventh Circuit
has previously rejected an argument that a third-party could claim a "legally cognizable interest"
in a bank account not held in their name because they generated the funds in the account. (*Id.*) The
Government asserts Crugnale's similar argument should be rejected on the same basis. (*Id.*) The
Government argues Florida law does not recognize third-party interests in bank accounts because
the third-party is not in privity with the bank. (*Id.* at 16.) Here, the Government claims Crugnale's
agreement with the OASM principals to utilize the OASM Accounts as nominee accounts does

not grant Crugnale standing unless such an agreement was shared with the relevant banks, which did not occur here. (*Id.* at 16–17.)

Crugnale argues he has statutory standing based on being the owner of the Seized Funds with an interest superior to the Government, and because he was a bona fide purchaser for value of the Seized Funds. (ECF No. 58 at 7.) Crugnale claims that courts routinely deny standing to "straw" or nominee owners who hold title in property for someone else, because such owners do not suffer injury when the property is taken. (*Id.* at 8.) Crugnale asserts Morgenstern and Salas did not file petitions in this case as they are not the owners of the Seized Funds. (*Id.* at 9.) Therefore, if Crugnale does not hold statutory standing, then no one would have standing to challenge the forfeiture of the Seized Funds, meaning the Government would not be accountable for a potentially arbitrary seizure. (*Id.*) Crugnale claims the Government has not cited, and he cannot find, any case denying statutory standing to a person who otherwise holds Article III standing (which the Government does not challenge in this case). (*Id.*; ECF No. at 2–3.) Crugnale claims he was the real owner of the OASM Accounts as he "arranged to have all the U.S. dollars he bought deposited into the accounts" and "personally orchestrated all of the transfers out of the account by remote access." (ECF No. 58 at 9.)

The Government emphasizes that a third-party petitioner in a criminal forfeiture proceeding must establish both Article III and statutory standing. (ECF No. 59 at 2.) The Government argues that Crugnale conflates the tests for Article III and statutory standing in his briefing. (*Id.*) The Government claims it does not dispute Crugnale's Article III standing, as he has "sufficiently alleged a colorable ownership interest that is a sufficient injury to grant him Article III standing." (*Id.* at 3.) The Government asserts, however, that it does not follow that because Crugnale holds Article III standing he also holds statutory standing. (*Id.*) In order to allege

statutory standing, the Government claims Crugnale must allege a "legal interest" in the property at issue. (*Id.* at 3–4.) The Government further claims that the extent of a petitioner's interest in forfeited property is determined by state law, and Crugnale "never disputes that because the [OASM Accounts] were opened in Florida, he must demonstrate a legal interest under Florida law." (*Id.* at 4.) The Government reiterates that a third-party petitioner "has 'no legally cognizable interest' in funds contained in a bank account held under another person's name." (*Id.*) The Government asserts that courts addressing claims where a petitioner has failed to identify a legal interest under state law have found such petitioners to lack standing. (*Id.* at 5–6.) The Government argues there is no legal requirement that someone have standing to challenge the Government's seizure, and it does not follow that because OASM is only a nominal title holder for the OASM Accounts, Crugnale must have statutory standing under § 853(n)(2). (*Id.* at 6.) The Government claims that whether Crugnale had dominion and control over the OASM Accounts is relevant only for Article III standing and is irrelevant as to statutory standing. (*Id.* at 6–7.)

To the extent that some courts have not raised statutory standing *sua sponte*, the Government argues this is because statutory standing, unlike Article III standing, is not jurisdictional, meaning it must be raised by one of the parties. (*Id.* at 8 n.2.) The Government also claims there may be a lack of cases directly on point because the fact pattern of a third-party petitioner "admitting to illegally opening a bank account under someone else's name, in violation of 18 U.S.C. § 1014" is generally absurd. (*Id.* at 8.) Ultimately, the Government asserts it is Crugnale's burden to show statutory standing in this case and to support this argument with appropriate case law. (*Id.* at 8–9.) The Government analogizes this case to other cases where courts have "denied statutory standing to individual petitioners who are members of a corporate entity such as a limited liability company (LLC) when the individual petitioner makes a claim to an asset

owned by the LLC." (*Id.* at 10.) The Government claims that in most jurisdictions "a 'member of an LLC has no legal interest in the assets that belong to the LLC.'" (*Id.* (quoting *Swartz*, 67 F.4th at 516)). Therefore, the Government asserts that a petitioner himself, not an intermediary nominee, must have a legal interest in the property subject to forfeiture. (*Id.* at 10–11.) The Government also argues that the fact no one may have standing to the challenge the seizure of the funds in the OASM Accounts is due to Crugnale's illegal opening of bank accounts using nominee owners, illegal operation of an unlicensed money transmitting business, and conspiracy to launder illicit proceeds from the United States to South America. (*Id.* at 11.) Therefore "Crugnale made decisions to break the law and exploit the American financial system." (*Id.*) Finally, the Government notes that, even if the Court rejects Crugnale's petition, he may still be able to petition the Attorney General for discretionary relief. (*Id.* at 12.)

Crugnale submitted a supplemental letter containing two authorities he claims supports his argument for statutory standing. The first case he cites is *United States v. Servidio*, No. 3:12-cr-00081, 2014 WL6389368 (D. Nev. Nov. 14, 2014) where he claims "the court held that the petitioner has alleged sufficient facts to plead a legal interest in the properties named in his third party claim to justify an evidentiary hearing under § 853(n)(6)." (ECF No. 64 at 1.) The second case he cites is *United States v. Bailey*, 926 F. Supp. 2d 739 (W.D.N.C. 2013), which he claims "is also relevant to the issue of the petitioner's standing to pursue its challenge to the preliminary order of forfeiture and the issue of whether the requisite nexus existed between the property to be seized and the offenses of conviction." (*Id.*)

### 2.    Analysis

The Court applies Florida law to determine whether Crugnale has standing under § 853(n)(6), because the Court looks to the state law where the property is located to determine

whether the petitioner has a valid interest. *See Swartz*, 67 F.4th at 516 ("Where the petitioner has no valid interest in the property under state law, the inquiry ends, and the claim fails for lack of standing." (quoting *Watts*, 786 F.3d at 161)); *United States v. Preston*, 123 F. Supp. 3d 117, 125 (D.D.C. 2015) (dismissing petition for lack of statutory standing in part because "[t]he Petition is devoid of any reference as to how James Preston, the grantor of an irrevocable trust, has a legal interest in the trust property under state law."); *United States v. Rudolph*, No. 22-012, 2024 WL 1604750, at *4 (D. Colo. Apr. 12, 2024) ("Based on the mail fraud conviction, the Court applies Arizona constructive trust law to determine whether a constructive trust exists over the forfeitable property because [*sic*] the unlawful mail fraud acts Defendant committed occurred in that jurisdiction."). In determining which state's law to apply, the Court looks to the "law of the jurisdiction that created the property right." *United States v. Hall*, 877 F.3d 676, 681 (6th Cir. 2017); *United States v. Koeln*, No. 19-1016, 2022 WL 93387, at *3 (E.D. Mo. Jan. 10, 2022); *United States v. White*, 675 F.3d 1073, 1078 (8th Cir. 2012) ("[A] court must first look to the law of the jurisdiction that created the property right to determine whether the claimant has a valid interest." (quoting *United States v. Timley*, 507 F.3d 1125, 1129–30 (8th Cir. 2007))). Here, the OASM Accounts were opened in Florida (ECF Nos. 58-1, 58-2), so the Court applies Florida law to determine the validity of Crugnale's interest.

Florida law, consistent with other states' laws, holds that a petitioner does not have standing to contest the forfeiture of property held in the name of another. *See United States v. Eldick*, 223 F. App'x 837, 839–40 (11th Cir. 2007) (finding petitioner did not have legally cognizable interest in forfeitable properties owned under the name of his brother, despite claiming that he was responsible for the proceeds of the properties); *United States v. Hassan*, 411 F. Supp. 3d 1302, 1309 (M.D. Fla. 2019) ("Given the unrefuted assertions that Ms. Dhanpat is not legally

married to Defendant and does not hold title to the Property, her reliance on the conclusory contentions that she has a marital interest and holds an interest as a 'tenant by the entirety' are not enough.") *United States v. Meadows*, 189 F. Supp. 3d 882, 889–90 (D. Minn. 2016) (holding that petitioner who did not hold legal title to forfeitable property did not have statutory standing to challenge forfeiture despite petitioner claiming she had financial stake in and control of property, as a financial stake and effective control do not "establish the legal interest necessary for statutory standing"); *United States v. Alquzah*, 91 F. Supp. 3d 818, 824–27 (W.D.N.C. 2015) (holding that petitioner who "cited no law giving her a marital interest in any property, and . . . failed to provide any such authority thereafter" did not have statutory standing to challenge forfeiture of property, as there was no evidence she was an owner or purchaser of the property.). In this case, the OASM Accounts are held in the names of Salas and Morgenstern as principals of OASM (ECF No. 44 at 4–5). Because the OASM Accounts were not held in Crugnale's name, he does not have statutory standing to challenge the forfeiture of the Seized Funds in the OASM Accounts.

Crugnale has also generally failed to meet his burden of pleading his "legal right, title, or interest" in the Seized Funds under Florida law per 21 U.S.C. § 853(n)(3), as he cites to no cases and makes no mention of his entitlement under Florida law to the Seized Funds. Rather, Crugnale merely conclusorily states that he has a "legal right, title, or interest" in the Seized Funds (ECF No. 44 at 5), without mentioning how Florida law supports such an interest. Courts have held that petitions which do not adequately assert the petitioner's statutory standing and state law-based interest in forfeitable property fail to meet the pleading requirements of § 853(n)(3). *See Preston*, 123 F. Supp. 3d at 125 ("In his Petition, Mr. Preston fails to plead a legal interest in the Securities, and, therefore, he fails to establish statutory standing to contest their forfeiture. On this basis alone, the Petition should be dismissed as to the Securities."); *Alquzah*, 91 F. Supp. 3d at 824 ("Petitioner

16

cited no law giving her a marital interest in any property, and she has failed to provide any such authority thereafter. Petitioner is . . . asking the Court to find that she has a legal interest in the subject assets . . . without identifying any state law basis for such a claim."); *Hassan*, 411 F. Supp. 3d at 1309. Therefore, Crugnale has also failed to meet his burden to plead his "legal right, title, or interest" in the Seized Funds from the OASM Accounts per 21 U.S.C. § 853(n)(3).

Accordingly, because Crugnale does not have statutory standing under 21 U.S.C. § 853(n)(6) and has failed to meet his burden under 21 U.S.C. § 853(n)(3), Crugnale's Petition (ECF No. 44) is **DISMISSED WITH PREJUDICE**.

### C.  Leave to Amend

The Court will not grant Crugnale leave to amend his Petition, because unlike ordinary civil proceedings, "the timing requirements for filing third party petitions under § 853(n)(2) are strictly construed." *Sze*, 2024 WL 195468, at \*12; *see also Croft*, 2023 WL 3676959, at \*2 ("The Fifth Circuit, along with many other circuits, has routinely held that the Section 853(n)(2) deadline is mandatory."); *Fabian*, 2013 WL 150361, at \*7 ("Further, the Fabians' corrected Amended Petition, containing a signature for SWM Holdings, LLC, was filed well past the thirty-day period provided in 21 U.S.C. § 853(n)(2). Therefore, the Court grants the government's Motion to Strike the corrected Amended Petition."). Courts have therefore applied § 853(n)(2) to deny amendments to petitions filed after the thirty-day deadline. *See Sze*, 2024 WL 195468, at \*12 (denying petitioner leave to amend petition because "the timing requirements for filing third party petitions under § 853(n)(2) are strictly construed"); *Fabian*, 2013 WL 150361, at \*7; *Klemme*, 894 F. Supp. 2d at 1116–17 (E.D. Wi. 2012) (refusing to consider third-party petitioner's letter purporting to amend petition because "[t]he letter also sets forth what appears to be a new basis for relief in response to the government's motion to dismiss, contrary to the deadlines set forth in § 853(n)(2)"). To the

extent the Second Circuit in *Swartz* permitted an amendment to a third-party petition, this case is distinguishable as the Government has not acknowledged that additional development of the record is necessary for this case, as it did in *Swartz*. *Swartz*, 67 F.4th at 520. Here, the forfeiture notice was sent to Crugnale on September 26, 2023, and delivered on September 27, 2023 with the deadline to file a petition being October 31, 2023. (ECF No. 62-1 ¶¶ 4–6; ECF No. 62-2 at 5, 20–23.) Since this deadline has now passed, the Court will not permit Crugnale to amend his Petition.

**IV.   CONCLUSION**

For the reasons set forth above, the Government's Motion to Dismiss (ECF No. 52) Crugnale's Petition (ECF No. 44) is **GRANTED**, and Crugnale's Petition (ECF No. 44) is **DISMISSED WITH PREJUDICE**.


Date: August 6, 2024                                      */s/ Brian R. Martinotti*
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**